IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00216-EWN-MEH

PHILLIP VIGIL,

      Plaintiff,

vs.

COMMANDER MISTRATA, in his personal and professional capacities, *et al.*,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before the Court on the County Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment ("County Motion to Dismiss") (<u>Docket #40</u>), and Defendant Correctional Healthcare Management's (CHM) Motion to Dismiss ("CHM Motion to Dismiss") (<u>Docket #62</u>). These Motions have been referred for recommendation. The Motions are fully briefed, and oral argument would not materially assist the Court in adjudicating it. For the reasons stated below, it is **recommended** that the Motions to Dismiss be **granted**. It is also recommended that any part of the County Motion to Dismiss which might be interpreted as a motion for summary judgment be denied as moot.[1]

All parties are advised that they shall have ten (10) days after service hereof to serve and file

---

[1]Although styled in the alternative as a motion for summary judgment, the County's filing includes no separate section on summary judgment; does not comply with the Court's rules concerning summary judgment motions; and as to evidence outside the pleadings, relies solely on two one-page incident reports.. It appears to this Court that the use of the phrase "or in the alternative motion for summary judgment" in the title of the document is surplusage. This Court need not reach any issue under a Rule 56 analysis, based on the analysis that follows.

any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

This *pro se* prisoner action under 42 U.S.C. § 1983 involves three claims: Two for failure to protect the Plaintiff from attack by other inmates (alleging violations of the Eighth and Fourteenth Amendments prohibiting cruel and unusual punishment and deprivation of due process rights), and one for inadequate medical care (an alleged violation of Plaintiff's Eighth Amendment right against cruel and unusual punishment/deliberate indifference to serious medical needs). Defendants do not dispute that Plaintiff has exhausted his administrative remedies. The individually named Defendants are sued in their "personal" and "professional" capacities and are alleged to have been involved in one or more of the claims above. Defendant CHM is alleged to have provided Plaintiff inadequate medical care. Defendants' Motions rely on Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and

56.

# FACTS[2]

## I.    <u>First Claim</u>

On July 10, 2005, Plaintiff, an inmate at the Criminal Justice Center (CJC) in El Paso County, Colorado, made a request to an unnamed Defendant correctional officer for segregation from inmate Steven Serrano, based on conflict the two had experienced prior to prison.  That evening, Plaintiff was informed that he had a court date the next day.  Plaintiff disputed the existence of a court date; nevertheless, he was transported to court the next day in a van separate from Mr.Serrano, who was also transported to court, although Plaintiff was transported in the same van with (but physically separated from) two other inmates who were on his "seg list."  Plaintiff alleges that he continuously objected to being transported to court, because his hearing had been cancelled.  Once they arrived at the court, the transporting deputies agreed that Plaintiff had no court date.  He was later transported back to the CJC, again in a van separate from Mr. Serrano, although the two of them made eye contact before the return trip occurred.  Before and during the van rides, the transporting deputies referred to Plaintiff as a "PC" (protective custody) inmate, in the presence of the other inmates who were being transported.

Once the vans returned to the CJC, Defendant Cayman led Plaintiff to the building first, but before they entered the building corridor, Cayman told Plaintiff to stand on the opposite side of the officer, meaning that the other transported inmates, who were following behind, would pass between Plaintiff and Cayman.  As the inmates passed, one of them feigned an assault on Plaintiff, causing him to startle and resulting in the rest of the inmates (including Mr. Serrano) ridiculing him.  The inmates

---

[2]This section relies on the facts as alleged by Plaintiff.

were then lined up to receive sack lunches, with Plaintiff being the last in line, separated by a distance from the other inmates.  As the inmates received their lunches and got back into line, the line got closer and closer to Plaintiff.[3]  There was no deputy near Plaintiff at that time.  One of the inmates spat upon Plaintiff, called him a snitch, and then kicked Plaintiff in the face.  Defendant Cayman saw the commotion and responded to Plaintiff, asking him if he had been hit.  Plaintiff said yes, and the officer grabbed the guilty inmate and pushed him away.  Plaintiff was given his lunch and taken to his cell.  A nurse arrived soon thereafter and examined him; a recreation specialist took two pictures of his face; and he was x-rayed soon thereafter.  He alleges that he spent the rest of the day and the entire next day asking for kites and asking for pain medication, all of which were refused.  At 10:30 p.m. on the evening of July 12, 2005, a nurse was allowed to see him, and she gave him Motrin.  The next day he was given a 10-day prescription based on "back pain protocol," which included Motrin and Flexiril.  Plaintiff's claims for inadequate medical treatment are contained within his third claim, discussed below.

Plaintiff contends that this incident was not investigated.  He also contends that Defendant Cayman informed Defendant Mack (a sergeant) that the kicking incident had occurred.  He further contends that Defendants Cayman and Willmot escorted the inmates to the court and back to the CJC and were the deputies who were responsible for controlling those inmates at all times during the incident and who failed to do so.

After this incident Plaintiff made numerous complaints and requests for information, all of which were denied by Defendant Mistrata.  Defendant Billiard "categorically denied" nine formal

---

[3]The parties dispute whether the closing of this distance was because of the shifting of the line or Plaintiff's movements.

grievances that Plaintiff filed, although Plaintiff does not allege that his procedural due process rights were violated.

II.   **Second Claim**

Sometime prior to September 30, 2005, an inmate named Nichols informed Defendants Presley, DeLuca, Habert, and O'Neil that an inmate named "Vigil" was threatening him. Defendants Presley, DeLuca, Habert, and O'Neil instructed Defendant Huffor to remove Plaintiff from protective custody and have him placed in administrative segregation. Plaintiff contends that the offending "Vigil" was another inmate on Plaintiff's ward, Plaintiff's cousin, Carlos Ford-Vigil. On September 20, 2005, these five Defendants moved both Plaintiff and Ford-Vigil to administrative segregation without conducting any investigation. When asked why they were being moved, Defendant Presley informed Plaintiff that it was for his own safety. Ford-Vigil strongly objected and was taken away by deputies. It was then that Plaintiff told the deputies that *Plaintiff* had convinced Nichols to complain about Ford-Vigil, because *Plaintiff* was having problems with Ford-Vigil. Plaintiff was taken away also. Plaintiff and Ford-Vigil were then placed into a ward (in the same cell) with inmates who were on disciplinary lockdown, including Mr. Serrano.

On October 6, 2005, Plaintiff was given a "write up" alleging that he had harassed other inmates on his ward and had been verbally abusive to Defendants Presley, Habert and Huffor. Huffor wrote the charges.[4] That night, Defendant Lyles was in charge of Plaintiff's ward. Lyles responded to a "welfare check" on the second floor of the facility. While he was gone, an inmate named Kramer had an accomplice inmate go to the guard station and electronically open the lock on Plaintiff's and Kramer's cell (it is unknown how this inmate got out of his cell). Kramer and his accomplice tried

---

[4]Plaintiff was ultimately found "not guilty."

to rush Plaintiff. Ford-Vigil restrained the other inmate while Plaintiff withstood the attack from Kramer. Ultimately, Plaintiff lifted Kramer off the ground and forced him outside the cell, where Lyles saw the commotion, responded, and put the inmates back in their cells. While the deputies were watching a video recording of what had happened, Kramer called Plaintiff a snitch and informed him that his gang, or Serrano's gang, would kill the Plaintiff if Plaintiff was sentenced to prison.

The deputies asked Plaintiff whether he wanted medical attention. He was examined by a nurse, but he again alleges that he was denied basic pain medication, as well as ice. The nursing staff informed him that he was already being given all the pain medication that they were allowed to prescribe, in treating the first altercation of July 2005. Plaintiff again submitted numerous kites and grievances, which were denied by Defendants Billiard and Presley.

## III.   Third Claim

Plaintiff contends that Defendants Billiard, Presley, and CHM demonstrated deliberate indifference to Plaintiff's serious medical needs. Specifically, from the time of the first assault until the evening of the next day, Plaintiff continuously asked for pain medication and was denied. He states that from the morning of July 12, 2005, until the end of the day, he experienced "extreme pain in his neck, shoulders, [and] lower back" and had "black eyes." After his 10-day regimen of pain medications ran out, on July 23, 2005, he had to spend the weekend without any medication. The following Monday he was examined and was given a 30-day extension for pain medications. On September 10, 2005, Plaintiff asked to be taken to his own doctor, but Defendant Mistrata said that Plaintiff would have to pay for it, and Plaintiff is indigent. He made the same request on September 20, 2005 and was denied again. His medication ran out on September 23, 2005, and he spent another three-day period in pain.

After the second attack, Plaintiff was denied additional pain medication and ice.  He claims

he received no additional medical treatment until 18 days later, on October 24, 2005.

## DISCUSSION

**I.**     <u>Standard of Review</u>

A.     <u>12(b)(6)</u>

A dismissal for failure to state a claim under Rule 12(b)(6) is appropriate only when it is

apparent that a plaintiff can prove no set of facts which would entitle him to relief.  *See Ledbetter v.

City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).  In evaluating a 12(b)(6) motion to dismiss,

"all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light

most favorable to the nonmoving party."  *Sutton v. Utah State Sch. for Deaf and Blind*, 173 F.3d

1226, 1236 (10th Cir. 1999).  The issue in reviewing the sufficiency of a plaintiff's Complaint is not

whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his claims.

*See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *(*overruled on other grounds by *Harlow v.

Fitzgerald*, 457 U.S. 800 (1982)).  Although a plaintiff does not need to state each element of his

claim precisely, he must plead minimal factual allegations on those material elements that must be

proved.  *See* Fed.R.Civ.P. 8(a); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

B.     <u>12(b)(1)</u>

A motion to dismiss based on qualified immunity is treated as a motion to dismiss for lack of

subject matter jurisdiction. *See Meyers v. Colo. Dep't of Human Services*, 2003 WL 1826166 (10th

Cir. 2003) (unpublished opinion).  A Rule 12(b)(1) motion to dismiss "must be determined from the

allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."

*Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter

jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

"Motions to dismiss pursuant to Rule 12(b)(1) may take two forms." *Amoco Production Co. v. Aspen Group*, 8 F.Supp.2d 1249, 1251 (D.Colo. 1998). First, a party may attack the facial sufficiency of the complaint and the court must accept the allegations of the complaint as true. *Id.* Second, a party may attack the factual assertions regarding subject matter jurisdiction through affidavits and other documents and the court "has wide discretion to allow affidavits, other documents and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). "A 12(b)(1) motion . . . can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion." *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987) The Defendants' Motion To Dismiss challenges the factual assertions underlying Plaintiff's Amended Complaint.

Because Defendants have raised the defense of qualified immunity, the Court must first determine whether the Plaintiff has alleged a deprivation of a constitutional right at all. Then, the Court must determine whether such right was clearly established at the time of the alleged violation. *Latta v. Keryte*, 118 F.3d 693, 697-98 (10th Cir. 1997). Moreover, a plaintiff must establish the personal involvement of each defendant in the alleged violation(s). *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").

C.      Summary Judgment

Summary judgment serves the purpose of testing whether a trial is required.  *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law.  *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006). If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*,

432 F.3d 1114, 1122 (10th Cir. 2005).  "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party."  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

      D.    *Pro Se* Standard

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The court should not be the *pro se* litigant's advocate.  *Hall*, 935 F.2d at 1110. A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'"  *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## II.   **Analysis**

      A.    Official Capacity Claims.

Plaintiff has named each of the County Defendants in their "personal" and "professional" capacities, which the Court will interpret as individual and official capacities.  An official capacity lawsuit is equivalent to a suit against El Paso County, Colorado.  Under 42 U.S.C. § 1983, municipalities and other local government entities may be liable only for acts for which the government entity is actually responsible, that is, acts which the government entity officially sanctioned or ordered.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (liability under § 1983 against a county employee in their

official capacity requires a showing of a causal link between an official policy or custom and the plaintiff's injury).   Liability against a County must be premised on (1) a constitutional violation (2) caused by a government policy or custom.  *Whitewater v. Goss*, No. 05-7081, 2006 WL 2424788 *1 (10th Cir. Aug. 23, 2006).  A plaintiff may establish the existence of an unconstitutional custom or policy for purposes of liability under *Monell* in three ways: "(1) there is an express policy that causes a constitutional deprivation; (2) there is an allegation that the constitutional injury was caused by a person with final policymaking authority; or (3) there is a widespread, though not express, practice of deprivation that is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Praprotnik*, 485 U.S. at 122-23 (quoting *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167-68 (1970)).  Plaintiff does not allege that an express policy existed in this instance, nor does he allege that a person with final policymaking authority was involved.  Plaintiff's sole allegation of a custom or policy is that deputies customarily refer to a protective custody inmate as "P.C." even in front of other inmates.  To establish a case based on custom, the Plaintiff must demonstrate:

> (1)  The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the [county]'s employees;
> (2)  Deliberate indifference to or tacit approval of such misconduct by [County]'s policymaking officials (board) after notice to the officials of that particular misconduct; and
> (3)  That [Plaintiff] was injured by virtue of the unconstitutional acts pursuant to the board's custom and that custom was the moving force behind the unconstitutional acts.

*Gates v. Unified School District*, 996 F.2d 1035, 1041 (10th Cir. 1993).

The Court believes that under the law of "deliberate indifference" discussed below, Plaintiff's allegations are insufficient as a matter of law to state a claim against the County.  First, Plaintiff fails to demonstrate unconstitutional misconduct under the facts that he alleges.  If Plaintiff alleged that

the County's custom includes identifying an inmate as "P.C." and then deliberately placing the "P.C." inmate in a position to be assaulted by other inmates, the claim might be a different one.  Second, he fails to plead any facts or fact from which it can be inferred that the approval of the County's policymaking officials or to demonstrate a direct causal link between County action and the alleged deprivation.  Therefore, the Court recommends that the Motion to Dismiss all claims against Defendants in their official (or "professional") capacities be **granted**.

B.   Claim One

Claim One alleges that various deputies let it be known among the transported inmates that Plaintiff was in protective custody, and that after the deputies returned the Plaintiff and other inmates from a trip to court (a trip on which Plaintiff alleges he should not have been), the deputies were lax in their control of the other inmates, resulting in Plaintiff being assaulted.  The Defendants who are named in this Claim are as follows:

1.   Unknown Named Ward Deputy: Plaintiff informed this Defendant that his court date had been cancelled, and that Plaintiff should be separated from Mr. Serrano.

2.   Defendant Cayman: Plaintiff alleges that Defendant Cayman was responsible for maintaining security among the prisoners upon return to the jail and permitted the unnamed inmate to assault Plaintiff.  Plaintiff also alleges the lack of an investigation of this incident.

3.   Defendant Willmot: Plaintiff makes the same allegations against Defendant Willmot as Defendant Cayman.

4.   Defendant Mack: Plaintiff claims that he told Defendant Mack about the assault, and this Defendant failed to have it investigated.

5.   Defendant Mistrata: Plaintiff alleges that Defendant Mistrata ignored Plaintiff's requests for information regarding the incident.

6.   Defendant Billiard: Plaintiff alleges that Defendant Billiard denied nine formal grievances that Plaintiff filed.

With regard to Plaintiff's allegations against the Defendants in their individual capacities, the Court finds the following.  First, Plaintiff does not state a constitutional violation concerning his claims that he was transported to the court and back in the same van or in the same convoy as Mr. Serrano, from whom he sought protection.  Even housing a protective custody inmate in a cell next to the person from whom he seeks protection does not state a constitutional violation.  *Lesley v. Whetsel*, 110 Fed. Appx. 851, 853 (10th Cir. 2004).  Plaintiff was separated from Mr. Serrano at all times.  His jailers took "reasonable measures to insure [his] safety," and Plaintiff has not pleaded that he was placed in a condition posing a substantial risk of serious harm.  *See Lopez v. LeMaster*, 172 F.3d 756, 760-61 (10th Cir. 1999).  Indeed, Mr. Serrano did not touch the Plaintiff (although Plaintiff infers, but does not allege, that Serrano might have had something to do with instigating the attack that did occur).

Second, Plaintiff does not state a claim concerning transporting him to court despite the fact that he had no court date.  Prison officials have the authority to move prisoners, and absent an allegation that this was an act designed to harm the Plaintiff, there is no constitutional violation alleged.

Third, concerning Plaintiff's "failure to protect" allegations which arose upon return from court, "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  This right was clearly established at the time of the incidents in this case.  As noted above, to establish a cognizable Eighth Amendment claim for failure to protect, the plaintiff " 'must show that he is incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th

13

Cir. 2003) (quoting *Benefield v. McDowall,* 241 F.3d 1267, 1271 (10th Cir. 2001)).  To establish the subjective component, the Plaintiff must establish that the prison official was "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Id.* (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).  Deliberate indifference means that the prison official knew of the risk of harm and intentionally disregarded it. *Id.* (citing *Farmer*, 511 U.S. at 836-37).

Reading the Complaint (including its many attachments) liberally, the Court finds that at most, Plaintiff pleads a gross negligence case against the named Defendants.  According to Plaintiff, the Unknown Named Defendant failed to sufficiently follow up on Plaintiff's protestation that his court date had been cancelled.  The Court finds no violation of a constitutional right in this conduct.  This Defendant was also allegedly warned that Plaintiff and Mr. Serrano must remain separated.  The two were in fact separated during the court trip.  Plaintiff makes no allegations that the actions or inactions of the Unknown Named Defendant were intended to cause Plaintiff harm, or that this Defendant intentionally disregarded a known risk of harm.  Plaintiff alleges that when he informed this Defendant of the cancellation of his court date and his issues with Serrano, the deputy entered some information into the computer.  What Plaintiff appears to allege is that the other Defendants responsible for transporting the prisoners failed to pick up on this information, which perhaps alleges gross negligence, but that is insufficient to establish a constitutional violation.  *E.g., James v. Federal Bur. of Prisons*, 79 Fed. Appx. 417, 419 (10th Cir. 2003).

With regard to Defendants Cayman and Willmot, Plaintiff does not allege that they knew about his need to be separated from Serrano.  Without an allegation of some level of knowledge about an obvious risk, Plaintiff cannot state a claim of deliberate indifference against these two

14

Defendants.  It is certainly not unusual for inmates to be in close proximity to one another, as the inmates were here upon return from court.  Without some allegation that Defendants Willmot and Cayman knew about the need for Plaintiff to be separated from Serrano, and knowledge that Serrano was likely to have the other inmates do his dirty work for him (since Plaintiff does not allege that Serrano ever even attempted to attack him), the Court cannot find an allegation of a constitutional deprivation.  Indeed, in his response to the Motion to Dismiss, Plaintiff argues that these deputies "allowed themselves to become preoccupied" immediately prior to the assault.  This level of culpability does not equate with a constitutional violation based on "deliberate indifference."

With regard to identifying Plaintiff as "P.C." within the hearing of other inmates, Plaintiff provides no factual allegations for this Court to find that knowledge of protective custody status *objectively* places substantial risk of serious harm, or that the prison officials were deliberately indifferent to Plaintiff's safety.  Plaintiff simply makes the conclusory allegation that such conduct "subjects the inmates to unnecessary risks of injury" under a "state created danger" theory, an allegation that is insufficient to state a deprivation of rights of a constitutional proportion.  Even in *pro se* cases, "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be granted."  *Hall v. Bellmon*, 935 F.3d 1106, 1110 (10th Cir. 1991).  And the "state created danger" doctrine, under which a state actor may be held liable for the violent acts of a third party if the state actor "created the danger" that caused the harm, *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002), requires that the conduct "shock the conscience" of a reasonable person or the Court, *id.*, a standard that is not met here.

The problem with Plaintiff's Complaint is that it appears to argue that he was placed in danger because of he and Serrano being on the same trip to the court, not because of his protective custody

status.  Plaintiff does allege that right before the inmate assaulted him, another inmate spat upon him and called him a snitch.  However, Plaintiff makes no allegation that any of the Defendants labeled him a snitch.  Being a cooperative inmate may be one reason for the designation of protective custody, but the Court has reviewed numerous decisions in the Tenth Circuit and elsewhere, and these cases contain a myriad of reasons why an inmate is in protective custody (including having been in an altercation; having had run-ins with other inmates outside of prison; having been convicted of an infamous crime; having been identified for harm by a prison gang; and others).  Moreover, Plaintiff failed to identify any cases in which the courts have recognized a known, inherent risk in being a protective custody inmate, and this Court could likewise find no such case.

Finally, Plaintiff alleges that Defendants Mack, Cayman and Willmot did not investigate the assault,[5] and Defendants Mistrata and Billiard ignored his requests for information and denied his grievances.  Unfortunately for the Plaintiff, the establish jurisprudence in this area does not support his theories.  In a case similar to this (although involving much more egregious allegations of failure to protect in connection with numerous assaults on the plaintiff), *Chavez v. Perry*, 142 Fed. Appx. 325 (10th Cir. 2005), a protective custody inmate alleged that he was "showcased" as P.C. before other inmates; he was permitted to be assaulted by general population inmates; the prison failed to investigate the assault; his numerous requests for better protection went unanswered; and his grievances were ignored.  In fact, the defendants in *Chavez* permitted the inmate plaintiff to be assaulted in the same location (the law library) several different times.  Indeed, in *Chavez*, the plaintiff alleged that the defendants were actually aware of protective custody inmates' vulnerability to assault

---

[5]Interestingly, in his response to the Motion to Dismiss, Plaintiff alleges that there was, in fact, an incident report concerning this assault.

but failed to ensure that the library was monitored by an officer when plaintiff was there.  Moreover, the plaintiff alleged, as here, that protective custody inmates were regularly moved among the general population, creating an unreasonable risk of harm.  The plaintiff suffered multiple assaults as a result of the prison's actions.

The *Chavez* court held that, even in the face of these multiple assaults which occurred at times when prison officials should have known of the unreasonable risks of danger to the plaintiff, the failure to allege intentional conduct or a deliberate course of action mandated dismissal of the claims against the guards who were supposed to be protecting the plaintiff.  *Id.* at 330.  "Plaintiff did allege that the defendants were aware of the risk involved, . . . but that does not address the critical legal deficiency . . . regarding the requisite character of the action or omission taken in the face of the risk." *Id.*  Moreover, the court identified no constitutional violation in failing to investigate, ignoring requests for information, and denying grievances that were designed by the plaintiff to provide more protection, and this Court does not believe that these allegations state a claim for a deprivation of a constitutional right.  *See Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004) (no constitutional violation in failing to properly investigate allegations of a sexual assault); *Chavez*, *supra* (finding no constitutional deprivation despite denials of plaintiff's numerous requests for information and grievances).  Further, Plaintiff alleges no procedural due process violation concerning these denials.

For these reasons, the Court recommends that the Motion to Dismiss Claim One be **granted**.

C.    Claim Two

Claim Two alleges that the on-duty deputy left his post on Plaintiff's cell ward, permitting Plaintiff's antagonist's cohort to go to the deputy's desk, open Plaintiff's and his antagonists cells,

and enter into Plaintiff's cell for the purpose of assaulting Plaintiff.  The Defendants who are named

in this Claim are as follows:

1.  Defendants Presley, DeLuca, Habert, and O'Neil: Plaintiff alleges that these
    Defendants arranged for Plaintiff to be put into administrative segregation, where his
    enemy, inmate Kramer, was in a position to try to harm him.  Further, Defendants
    Presley and Habert allegedly accused Plaintiff of an infraction, namely, being verbally
    abuse to them, an accusation concerning which Plaintiff was later exonerated.

2.  Defendant Huffor: Plaintiff alleges that Defendant Huffor actually moved Plaintiff to
    administrative segregation.

3.  Defendant Lyles: Plaintiff alleges that Defendant Lyles was in charge of Plaintiff's
    ward on the night of the second assault and was on the second floor responding to a
    "welfare check" when the assault happened.

4.  Defendants Billiard and Presley: Plaintiff alleges that these Defendants again ignored
    his kites and grievances.

With regard to Claim Two's allegation of placement into administrative segregation, the claim

suffers from the same fatal flaw as the first claim: The lack of any allegation that the Defendants did

the transfer under circumstances demonstrating a substantial risk of serious harm, or that the prison

officials were deliberately indifferent to Plaintiff's safety.  Specifically, Plaintiff pleads no allegations

concerning the intent of Defendants Presley, DeLuca, Habert, O'Neil, and Huffor in having Plaintiff

placed in administrative segregation, nor does Plaintiff plead any facts that administrative segregation

creates a substantial risk of serious harm.  Indeed, administrative segregation is perhaps the most

restrictive sort of confinement an inmate could be in.  *E.g.*, *Jordan v. Federal Bur. of Prisons*, No.

04-1104, 2006 WL 2135513 *8 (10th Cir. July 25, 2006).  It appears that the vast majority of cases

dealing with administrative segregation involve claims by inmates that this sort of confinement is

unconstitutionally harsh because of the seclusion and restricted movement of inmates.  As a matter

of law, the Court concludes that placement in administrative segregation, absent allegations that the

18

placement was a set up or that this facility's particular brand of administrative segregation is vastly different than that at other prisons (allegations that are lacking here), cannot give rise to a claim of substantial risk of serious harm.

With regard to the claim that Defendant Lyles left his duty station to attend to a matter on the second floor, thus allowing Kramer and another inmate to pop the lock on Plaintiff's cell, the Court again finds that the lack of any allegation of intentional conduct on the part of the Defendant is fatal to Plaintiff's case.[6] In such a situation, absent a claim that Defendant Lyles deliberately opened the cell doors of the Plaintiff and his attacker or knew that Kramer could get into Plaintiff's cell and deliberately ignored that potential, Claim Two must be dismissed. *E.g.*, *Lesley v. Whetsel*, 110 Fed. Appx. 851 (10th Cir. 2004) (finding that absent an allegation that deputies were aware of a conflict between two inmates and deliberately placed them in the same protective-custody pod, and then deliberately opened both cell doors so that the plaintiff could be attacked, a claim for failure to protect should be dismissed). Plaintiff does not allege that the Defendants knew that Kramer presented a specific risk to Plaintiff (indeed, Plaintiff merely alleges that Kramer was a "known gang member), nor does Plaintiff allege that Defendant Lyles was not sincere in responding to the call on the second floor. Again, while Plaintiff's Complaint may allege acts that were regrettably negligent, he does not allege intentional conduct.

Finally, Plaintiff's allegations concerning the lack of prison interest in his kites and grievances fails for the same reason as his similar allegations in Claim One.

For these reasons, the Court recommends that the Motion to Dismiss Claim Two be **granted**.

---

[6]Indeed, in his response to the Motion to Dismiss, Plaintiff alleges that this sort of incident occurs because of "negligent supervision" by the on-duty deputy.

D.   Claim Three

Claim Three alleges that certain Defendants demonstrated deliberate indifference to Plaintiff's serious medical needs.  The Defendants who are named in this Claim are Billiard, Presely, and CHM, who are alleged to have not honored Plaintiff's requests for pain medication.  However, Plaintiff makes only one allegation against any specifically identified Defendants, asserting that when he asked to see his own doctor on September 10 and 20, 2005, Defendants Mistrata and Billiard responded that Plaintiff would have to pay for it and that otherwise, the request for outside treatment was denied.  All other allegations concerning lack of medical treatment fail to identify any individuals.

Although the County Defendants do not address Claim Three in their Motion to Dismiss (perhaps believing that this Claim reaches only the corporate defendant), the district court may *sua sponte* dismiss a claim under Fed. R. Civ. P. 12(b)(6).  *E.g., Curley v. Perry*, 236 F.3d 1278, 1284 (10th Cir. 2001).  Such dismissal is limited to cases where it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing the plaintiff an opportunity to amend the complaint would be futile.  *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

The Eighth Amendment protects the right of a prisoner to receive treatment for serious medical needs, but not by a doctor of his own choosing. *E.g.*, *United States v. Rovetuso*, 768 F.2d 809, 825 (7th Cir. 1985); *Davis v. United States*, 415 F. Supp. 1086, 1098 (D. Kan. 1976) (inmate might have the *privilege* of seeing his own doctor, but not at government expense).  Therefore, Plaintiff fails to allege a violation of a constitutional right arising from the actions of Defendants Mistrata and Billiard in requiring Plaintiff to pay for treatment by his own doctor.  *Cf. McCracken v. Jones*, 562 F.2d 22 (10th Cir. 1977) (finding that it was within the warden's discretion to deny request from inmate to see his own doctor).

With regards to the CHM Motion to Dismiss, the Court rejects this Defendant's argument that it is not a state actor. "[P]ersons to whom the state delegates its penological functions, which include the custody and supervision of prisoners, can be held liable for violations of the Eighth Amendment." *Smith v. Cochran*, 339 F.3d 1205, 1215 16 (10th Cir. 2003) (citing *West v. Atkins,* 487 U.S. 42, 57 (1988) (holding that a private doctor treating prisoners under a contract with state prison authorities acted under color of state law for purposes of § 1983 suit alleging Eighth Amendment violation)). It appears clear from this Court's review of the law that when a prison turns its medical care over to a private entity (and CHM does not dispute that it performed the CJC's medical care function), that entity becomes a state actor for purposes of § 1983 liability.

However, CHM is correct in its argument that Claim Three fails to state a claim. As noted above, the Plaintiff must allege the personal involvement of any individual Defendant; a governmental entity may be sued under § 1983 only by the inmate establishing (1) a constitutional violation (2) caused by a government policy or custom. Plaintiff makes no allegations of a policy or custom against CHM; therefore, the Complaint fails to state a claim against CHM as an entity.

Based on the foregoing, the Court recommends that Claim Three be dismissed.

## CONCLUSION

Based upon the foregoing, and the pleadings on file herein, it is hereby **recommended** as follows:

1. County Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment [Filed May 30, 2006; Docket #40] be **granted** with regard to the request for dismissal, but **denied** as moot with regard to the request for summary judgment, resulting in this action be dismissed with prejudice, in its entirety, against all County Defendants.

2. Defendant Correctional Healthcare Management's Motion to Dismiss [Filed

on June 16, 2006; Docket #62] be **granted**, and this action dismissed with prejudice in its entirety against this Defendant.

Dated at Denver, Colorado, this 18th day of September, 2006.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge